UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC.,

Plaintiff,

v.

PLYMOUTH COUNTY SHERIFF'S DEPARTMENT,

Defendant;

UNITED STATES OF AMERICA,

Interested Party.

No. 1:26-cv-14149-LTS

**UNITED STATES OF AMERICA'S MOTION TO QUASH STATE COURT ORDER AND TO DISMISS PLAINTIFF'S COMPLAINT**

On February 13, 2026, Plaintiff American Civil Liberties Union of Massachusetts, Inc. ("ACLUM") filed a state court complaint against Defendant Plymouth County Sheriff's Department ("PCSD") seeking records and information concerning immigration detainees under the Commonwealth's public records law[1]—information that is protected from disclosure by a federal regulation, 8 C.F.R. § 236.6. *See* State Ct. Rec., Doc. No. 9-1 at 7. The intergovernmental service agreement ("IGSA") between the U.S. Department of Homeland Security ("DHS") and PCSD[2] for the detention and care of U.S. Immigration and Customs Enforcement ("ICE")

[1] Mass. Gen. Laws ch. 66, § 10.

[2] Doc. No. 9-1 at 34 (Art. 8.B.). The IGSA is between DHS and the Plymouth County Correctional Facility. ACLUM's complaint names the Plymouth County Sheriff's Department, which operates the correctional facility, as the defendant. For purposes of this motion and to avoid

detainees, and 8 C.F.R. § 236.6, both provide that the detainee records ACLUM seeks are federal records subject to, among other provisions, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that the records remain under the control of DHS, and that the information is subject to disclosure only by DHS and only pursuant to federal law. Knowing that it could (and should) submit a FOIA request for the information to DHS, ACLUM instead pursued relief against PCSD under the Commonwealth's public records law; ultimately filing a complaint against PCSD in Massachusetts Superior Court ("the state court") to compel production of the records. Doc. No. 9-1, generally. The state court issued an order requiring PCSD to produce the DHS records sought by ACLUM—an order "against or directed to" the United States—and the United States removed the action to this Court. 28 U.S.C. §§ 1442(a)(1), (g).

The United States respectfully asks this Court to vacate or quash the state court's order requiring PCSD to produce federal records under Massachusetts public records law, and to dismiss ACLUM's Complaint. The applicable federal regulation, 8 C.F.R. § 236.6, provides DHS with exclusive authority over information relating to ICE detainees. The state court's order requiring PCSD to produce DHS records was entered without joinder of the United States, a required party to the action. The state court's order impairs the federal government's ability to protect its interests, and it risks inconsistent results and obligations. Fed. R. Civ. P. 19(a). Because joinder of the United States in the state court is not feasible, however, the state court order cannot be enforced, and the litigation should not be permitted to continue "in equity and good conscience." Fed. R. Civ. P. 19(b). Allowing the state court action to proceed and enforcing its order will result in prejudice to the United States, where an alternate remedy for ACLUM to obtain the information

---

confusion, the government uses PCSD to refer collectively to the Sheriff's Department and the correctional facility, unless otherwise noted.

it seeks exists. Fed. R. Civ. P. 19(b). Finally, control and disclosure of the immigration detainee records that are the subject of the state court's order are governed by federal law, 8 C.F.R. § 236.6. Even if the state court's order is valid (which it is not), federal law preempts state public records law in this case. The state court's order requiring PCSD to disclose DHS records notwithstanding § 236.6, frustrates DHS's objective to maintain a uniform, national method of disclosing immigration detainee information, and a conflict between state and federal law exists. As such, the state court's order is preempted and unenforceable under the Supremacy Clause.

For these reasons, and as explained more fully below, the United States respectfully requests the Court quash or vacate the state court's order requiring PCSD to produce federal records, and dismiss the Complaint. Fed. R. Civ. P. 12(b)(1)–(7), 19(a)(3).

## BACKGROUND

The Court is familiar with the background of this case which the United States summarizes here.

On February 13, 2026, ACLUM filed a complaint against PCSD in state court seeking relief under the Commonwealth's public records law, to obtain DHS records and information relating, in general, to the provision of medical care to ICE detainees. Doc. No. 9-1 at 7. PCSD produced select records, but otherwise invoked state public records law exemptions and 8 C.F.R. § 236.6 to withhold the remaining records, arguing in part that the provisions of the IGSA and 8 C.F.R. § 236.6 prohibited disclosure of the information. *Id.* at 8 ¶¶ 4–6, 69–70, 72–73; Pl. Mtn. Remand, Doc. No. 14-3 at 3–5. Despite withholding these records, PCSD advised ACLUM that it could request immigration detainee records from DHS pursuant to FOIA. Doc. No. 14-3 at 3. ACLUM did not make a FOIA request to DHS, and instead elected to proceed with state court litigation against PCSD in order to obtain the records.

On August 11, 2026, the state court issued an order requiring, *inter alia*, PCSD to produce redacted versions of records containing immigration detainee information, finding that disclosure was required under Mass. Gen. Laws ch. 66, § 10, but redaction of ICE detainees' identifying information satisfied the requirements of 8 C.F.R. § 236.6. *See* Mem. and Order, Doc. 1-2 at 7.

## ARGUMENT

### A. ACLUM's Complaint Must Be Dismissed For Lack Of Jurisdiction

The state court lacked jurisdiction to compel disclosure of federal records and ignored that a federal regulation, 8 C.F.R. § 236.6, expressly prohibits PCSD from disclosing immigration detainee records.

The federal "housekeeping statute," 5 U.S.C. § 301, "authorizes government agencies . . . to adopt regulations regarding the custody, use, and preservation of agency records, papers, and property." *U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 595 (2d Cir. 1999), *opinion amended on reh'g*, 212 F.3d 689 (2d Cir. 2000) (cleaned up). *See also United States v. Crater*, 93 F.4th 581, 586 (1st Cir.), *cert. denied*, 145 S. Ct. 218, 220 L. Ed. 2d 54 (2024) (*Touhy* regulations promulgated under the housekeeping statute govern the procedures by which agency employees may testify and confer upon agencies the ability to "validly withdraw from subordinates the power to release department papers" in civil proceedings") (cleaned up).

As relevant here, in order to "establish[] a uniform policy on the public release of information on [DHS][3] detainees," and to "ensure[] [DHS's] ability to support the law enforcement

[3] The Department of Homeland Security was created by the passage of the Homeland Security Act of 2002. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (2002). It is an executive department of the United States, 6 U.S.C. § 111(a), and includes component agencies U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and ICE. Homeland Security Act of 2002, 116 Stat. 2135; 6 U.S.C. § 252; *Burgess v. O'Malley*, No. 23-cv-11805-ADB, 2024 WL 4123650, at *5 (D. Mass. Sept. 9, 2024) (explaining Homeland Security Act and DHS). The Act transferred former Immigration and

and national security needs of the United States," DHS adopted 8 C.F.R. § 236.6. Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364 (Jan. 29, 2003). The regulation applies to disclosure "by any state or local government entity . . . of the name and other information relating to any immigration detainee being housed or otherwise maintained or provided service on behalf of [DHS]." *Id.* More specifically, 8 C.F.R. § 236.6 expressly prohibits a state or local entity from disclosing, or permitting to be made public, "the name of, or other information relating to" an immigration detainee. 8 C.F.R. § 236.6. Instead, such information "shall be under the control of [DHS] and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations, and executive orders." *Id.* And "[i]nsofar as any documents or other records contain such information, such documents shall not be public records." *Id.* Notably, the regulation "applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information." *Id.*

The Secretary of DHS is charged with "administration and enforcement" of "laws relating to the immigration and naturalization of aliens," and is authorized to establish regulations, such as 8 C.F.R. 236.6, as necessary to carry out his authority to do so. 8 U.S.C. § 1103(a)(1), (3). "Control over immigration and naturalization is entrusted exclusively to the Federal Government, and a State has no power to interfere." 68 Fed. Reg. 4364 (citing *Nyquist v. Mauclet*, 432 U.S. 1, 10 (1977); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("The responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political

---

Naturalization Service's ("INS") responsibilities to DHS. *Khanal v. Blanche*, 168 F.4th 1, 6 n.10 (1st Cir. 2026).

branches of the Federal Government.”). *See also ACLU of New Jersey, Inc. v. Cnty. of Hudson*, 352 N.J. Super. 44, 86 799 A.2d 629, 653 (App. Div. 2002) (concluding § 236.6 was “duly promulgated within the scope of authority delegated” by Congress and federal preemption applied to preclude disclosure of detainee information under state public records law); *Comm’r of Correction v. Freedom of Info. Comm’n*, 307 Conn. 53, 80, 52 A.3d 636, 653 (2012) (affirming authority to promulgate § 236.6 and holding detainee records were statutorily exempt from disclosure, noting that the regulation “primarily affects matters involving immigration and national security, which are matters that are exclusively within the purview of the federal government,”); *Voces De La Frontera, Inc. v. Clarke*, 2017 WI 16, 373 Wis. 2d 348, 891 N.W.2d 803 (holding detainee information statutorily exempt from disclosure under state public records law, and finding purpose of regulation includes protecting privacy of detainees, guaranteeing uniform treatment of disclosure of detainee information, and preventing ongoing investigations from being adversely impacted).

“Moreover, to the extent that the rule implicates contracts between the federal government and state, local or private entities to house federal detainees, those contracts are governed by federal law.” 68 Fed. Reg. 4364, 4365. “The rights of the United States under its contracts are governed exclusively by federal law.” *Id*. (citing *Boyle v. United Technologies Corp*., 487 U.S. 500, 504 (1988)). “With respect to contracts to house [DHS] detainees, the regulation confirms what should always have been evident: that federal contractors with the [DHS] may not use the information obtained in housing federal detainees to impair the federal government’s enforcement of the immigration and criminal laws.” *Id*. (cleaned up).

Plainly, the state court’s order directing PCSD to disclose immigration detainee records and information to ACLUM (even in redacted form) does not comply with federal law and

adversely impacts DHS's legal interests. As 8 C.F.R. § 236.6 explicitly provides, PCSD may not disclose ICE detainee information—information exclusively within DHS's control—and such detainee information is not a matter of public record. Contrary to the state court's order, "[t]he plain language of the statute makes clear that only ICE can release this information." *Cote v. Borders*, No. 5:11-CV-30-OC-10TBS, 2011 WL 6004081, at *2 (M.D. Fla. Dec. 1, 2011) (noting that in cases in which such information was released ICE released the information) (citations omitted). *See also Burnett v. CNO Fin. Grp., Inc.*, No. 1:18-CV-00200-JPH-KMB, 2024 WL 3161855, at *2 (S.D. Ind. June 24, 2024) (information covered by 8 C.F.R. § 236.6 is not public record and is required to be sealed). The state court's order requiring PCSD to produce immigration detainee records and information to ACLUM under the Commonwealth's public records law flies in the face of the federal regulation: PCSD is prohibited from disclosing the information, detainee information is under DHS control and is subject to disclosure only by DHS and only pursuant to federal law, regulation and executive order, and immigration detainee records are not public records. The state court's order is unenforceable and must be vacated or quashed.

But even if the state court's order was valid, the state court lacks authority and cannot compel disclosure of DHS records against its regulations. *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998) (collecting cases). *See also Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994) (state court lacks authority to compel discovery of FBI surveillance tapes after DOJ denied production under its *Touhy* regulations); *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (reversing contempt order against FBI agent who refused to produce records because doing so would violate a DOJ regulation). Although ACLUM may argue that the state court's order is directed to PCSD (and not to the United States), that position ignores the plain language of 8 C.F.R. § 236.6, and the fact that the state court's order directing production of DHS records

is effectively an action against the United States, and "subject to the governmental privilege of sovereign immunity." *Smith*, 159 F.3d at 879 (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989)).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Doe v. Trump*, 157 F.4th 36, 43 n.2 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 2810 (2026) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). No such waiver exists in Mass. Gen. Laws ch. 66, § 10, the Commonwealth's public records law, and ACLUM's Complaint points to none. Thus, the state court lacked jurisdiction to enter an order directing production of federal records.

"It is clear that a federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction." *Smith*, 159 F.3d at 879. *See also Katz v. Spiniello Companies*, No. 16-11380, 2016 WL 7209662, at *3 (D. Mass. Dec. 12, 2016) (same). And "[t]he First Circuit has recognized the existence of the derivative jurisdiction doctrine, noting, a federal district court does not have removal jurisdiction over a claim that the state court lacked subject matter jurisdiction to decide in the first place." *Katz*, 2016 WL 7209662, at *3 (cleaned up) (citing *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 210 (1st Cir. 1987)).

Thus, where the state court lacked jurisdiction to issue an order requiring PCSD to produce federal records, so too does this Court. This "reflect[s] the principle of federal supremacy in two ways: (1) by applying the doctrine of sovereign immunity to preclude state courts, or a federal court on removal, from reviewing federal agency action, and (2) by giving recognition to the principle that valid federal regulations have the force and effect of federal law, which state courts

are bound to follow." *Id.* at 880 (citing *Boron*, 873 F.2d at 71). ACLUM's Complaint must be dismissed for lack of jurisdiction.

**B. The State Court's Order Requiring Production Of Records Is Preempted By 8 C.F.R. § 236.6**

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9, 21 (1st Cir. 2019) (quoting U.S. Const. art. VI, cl. 2). "This Clause gives Congress the power to preempt state law, which Congress may exercise either expressly or impliedly." *Id.* (cleaned up) (citing *Arizona v. United States*, 567 U.S. 387, 399, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012)). "A federal agency, however, also may preempt state law through its regulations, and a federal agency, too, may do so either expressly or impliedly." *Id.* (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Field preemption "ousts state law measures even if no evidence shows that they would conflict with the federal regulatory scheme either by frustrating its purposes and objectives, . . . or by imposing obligations that the federal regulatory scheme imposes." *Id.* (citations omitted).

The regulation preempts the state public records law to the extent that it requires production of federal immigration detainee records.[4] As 8 C.F.R. § 236.6 provides:

[4] Notably, the IGSA between DHS, ICE, and PCCF "for the detention and care of detainees (also referred to as 'noncitizens' and 'detained noncitizens')," outlines PCSD's records management obligations, and defines a "Federal record," which includes "records created, received, or maintained by a service provider pursuant to their ICE agreement," consistent with 8 C.F.R. § 236.6. Doc. No. 9-1 at 22, 34 (Art. 8.B.). Consistent with the federal regulation, the IGSA provides that information obtained by PCSD under the IGSA remains "under the control of ICE and is subject to public disclosure only pursuant to the provisions of applicable federal laws (such as the FOIA), regulations, and Executive Orders or as ordered by a Court." *Id.* at 44 (Art. 21.A.).

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.

"It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) (citations omitted); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (legislative rules have the force and effect of law). "This doctrine is so well established that agency regulations implementing federal statutes have been held to preempt state law under the Supremacy Clause." *Id*. at 298–96.

Here's the state court's order directing production of immigration detainee records is subject to field preemption. An order requiring PCSD to produce immigration detainee records, notwithstanding the provisions of § 236.6, would frustrate the purposes and objectives of the regulation, and would undermine the federal government's ability to administer its regulatory scheme uniformly, and nationwide. *See generally* Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364 (Jan. 29, 2003) ("This rule establishes a uniform policy on the public release of information on [DHS] detainees and ensures [DHS's] ability to support the law enforcement and national security needs of the United States."). This is especially so in the area of immigration enforcement, where important

government interests are at stake, including facilitation of law enforcement operations, the protection of detainees, and promotion of national security. *Id.*

Conflict preemption is present here, too. "The notion that underlies obstacle preemption is that the federal government would want a federal measure to be preemptive of any state law that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of that federal measure." *Capron*, 944 F.3d at 26 (citations omitted). As noted, the federal government intended to establish a nationally uniform method of disclosing information related to immigration detainees. A state court order requiring disclosure by a state entity (in this case, PCSD) of immigration detainee records, which the regulation provides is exclusively within DHS's control and subject to disclosure only by DHS, would clearly frustrate the stated objectives of the federal government and the purpose for enactment of the regulation. The text of 8 C.F.R. § 236.6 contemplated the exact situation present here: a state or local entity or contractor housing or providing medical services to detainees, in possession of immigration detainee records, being faced with a disclosure order for such records. And the regulation is clear—disclosure shall be made only by the federal agency.[5] The privacy concerns that the regulation seeks to protect are significant. *See Belbachir v. United States*, No. 06 C 1392, 2012 WL 5471938, at *3 (N.D. Ill.

---

[5] The interim rule explicitly noted its intent to supersede state or local public records law relating to disclosure of detainee information. "In view of the primacy of Federal law in this area, it would make little sense for the release of potentially sensitive information concerning [DHS] detainees to be subject to the vagaries of the laws of the various States within which those detainees are housed and maintained, by specific arrangement with [DHS], for the United States. Application of State law in this area has the potential to threaten the Attorney General's mission." 67 Fed. Reg. 19508, 19510 (Apr. 22, 2002). "State law, unlike Federal law, may not be well adapted to the special national security, law enforcement, and privacy concerns implicated by the release of this type of information." *Id.* "This rule provides for a uniform Federal approach to ensure the consistent treatment of all [DHS] detainees, including those being detained by non-Federal providers on behalf of [DHS]." *Id.*

Nov. 9, 2012). PCSD contracted with DHS as a service provider housing immigration detainees for ICE, and 8 C.F.R. § 236.6 specifically prohibits PCSD from disclosing detainee information.

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712 (1985) (cleaned up). However, "[b]y legislating in an area, Congress generally does not mean that States and localities are barred from imposing further requirements in the field." *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 325 (1st Cir. 2012) (citing *Hillsborough Cnty.,* 471 U.S. at 717). "Thus, courts routinely have upheld state statutes that impose tougher restrictions than their federal counterparts as long as the state law does not undermine the purposes of the federal statute." *Id.* (citations omitted). "Conversely, state statutes that flatly contradict policies embedded in a federal statute are preempted." *Id.* (citation omitted).

Here, the state court's order is broader than 8 C.F.R. § 236.6 provides and "flatly contradicts policies embedded" in the regulation. It compels PCSD to produce federal records (under state public records law) which the regulation expressly prohibits PCSD from doing—creating a direct conflict, and resulting in broader disclosure which undermines the purpose of the federal regulation: to allow DHS to maintain control of sensitive information of ICE detainees, and to provide a nationally uniform response to such requests. Further, the state court order requires PCSD to produce federal records under DHS's control pursuant to the requirements of state law (rather than FOIA), despite the plain language of the regulation that "such documents shall not be public records." 8 C.F.R. § 236.6. And finally, PCSD's compliance with the state court's order would subject it to inconsistent obligations, and would, as a general matter, produce inconsistent disclosure of sensitive detainee information for the United States. *See e.g. Travelers*

*Indemnity Co. v. Dingwell*, 884 F.2d 629, 635-38 (1st Cir. 1989) (discussing Rule 19b)). PCSD's compliance with the state court's order would violate the federal regulation (and the IGSA); its compliance with federal regulation by refusing to produce immigration detainee records would violate the state court order. Under the Supremacy Clause, federal law must control.

The federal regulation reflects a determination made by DHS that information concerning individuals who are detained on its behalf must be disclosed only under federally prescribed conditions and only by DHS. Allowing a state court to compel disclosure of detainee information by a state entity conflicts with the plain language of 8 C.F.R. § 236.6, and undermines the uniformity of and frustrates DHS's regulatory scheme. *See, e.g., United States v. California*, No. 2:18-CV-490-JAM-KJN, 2018 WL 3361055, at *1 (E.D. Cal. July 9, 2018) (dismissing government's Supremacy Clause claims, finding no conflict between 8 C.F.R. § 236.6 and California legislation establishing a review and reporting requirement for immigration detention facilities because the bill did not contemplate release of detainee information to the public).[6] The state court order compels conduct that the regulation, 8 C.F.R. § 236.6, expressly forbids. Preemption requires that the state court order be vacated or quashed, and that the Complaint be dismissed.

### C. The United States Is A Required Party

Rule 19 of the Federal Rules of Civil Procedure "addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit." *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013) (citing *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15 (1st Cir.

---

[6] *See also United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018*), aff'd in part, rev'd in part and remanded*, 921 F.3d 865 (9th Cir. 2019) (noting that the regulation is meant to prohibit public disclosure of information rather than disclosure of information to another government entity) (citations omitted).

2008)). "The Rule provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b)." *Id.* "The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." *Id.* (citations omitted).

The United States is a required party in the state court litigation brought by ACLUM against PCSD. Sovereign immunity prohibits the United States from being joined as a party in the state court, "[b]ut the ability to intervene cannot control the indispensability determination, which examines whether a party is an essential part of the controversy before the court." *Travelers Indem.*, 884 F.2d at 636. The government has a substantial interest in disclosure of its records, especially those containing sensitive information about its immigration detainees. This interest includes uniform disclosure of detainees' information. Absent the United States' joinder as a party, its ability to protect its governmental interest is impaired, as evidenced by this case. Fed. R. Civ. P. 19(a)(1)(B). And, as noted above, it leaves PCSD subject to "a substantial risk of incurring . . . inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

PCSD aptly advised ACLUM when it withheld federal records pursuant to 8 C.F.R. § 236.6 and the IGSA, that the proper method by which to obtain the information ACLUM sought was by a FOIA request. The state court order requiring PCSD to release DHS records when DHS was not a party to the lawsuit fails and is unenforceable. *Koch Acton, Inc. v. Koller*, No. 21-10374-FDS, 2022 WL 847408, at *4 (D. Mass. Mar. 22, 2022) (court cannot issue declaratory judgment between two contracting parties when only one is a party to the lawsuit) (citations omitted). ACLUM chose not to request the records from DHS pursuant to FOIA, or any other federal authority, at its peril. The case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866–67 (2008) (citing

cases dismissing action where required entity could not be joined due to sovereign immunity); *Picciotto v. Continental Casualty Co*., 512 F.3d 9 (1st Cir. 2008) (affirming dismissal of an indispensable party).

### D. The State Court Action Should Not Proceed In Equity And Good Conscience And Must Be Dismissed

For the aforementioned reasons, the United States could not be joined in the state court action. When joinder is not feasible, the Court will consider whether, "in equity and good conscience," the action must proceed. It should not. Rather, dismissal is warranted under Fed. R. Civ. P. 19(b). *See Picciotto v. Cont'l Cas. Co.,* No. 05-10901-NG, 2006 WL 8445727, *7 (D. Mass. Sept. 29, 2006), *aff'd*, 512 F.3d 9 (1st Cir. 2008). Evaluation of each of the Rule 19(b) factors favors dismissal.

#### 1. The state court's order substantially prejudices the United States' interest.

Under 8 C.F.R. § 236.6, the federal government has exclusive control over disclosure of the immigration detainee information that the state court ordered PCSD to produce to ACLUM. An order requiring PCSD to provide detainee information and records to ACLUM impairs the United States' ability to enforce its regulation, control dissemination of protected information, and inhibits the government's ability to maintain uniform disclosure of sensitive immigration detainee information. While ACLUM's public records request sought records "in an anonymized format" with redaction of detainee names, dates of birth, A-numbers, and other personally identifying information, *see e.g.* Doc. No. 9-1 at 78, its request did not provide for redaction of *all* personally identifying information for detainees. The United States has a substantial interest in ensuring that detainees' records are redacted in a consistent and uniform manner to protect detainees' privacy and to prevent their re-identification.

The state court made its decision in the absence of DHS; the agency charged with administration of its regulation. *See e.g. Reynolds Metals Co. v. Crowther*, 572 F. Supp. 288, 290 (D. Mass. 1982) (recognizing the federal government's ability to control disclosure of official information through agency regulation). The breadth of DHS's control over the immigration detainee information covered by 8 C.F.R. § 236.6 is notable. "Even if the regulation is interpreted to apply more broadly than just to public disclosure requests, the regulation places such information under the control of ICE…" *Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2018 WL 8921492, at *3–4, 6 (W.D. Wash. July 17, 2018) (requiring GEO to submit discovery requests for review by ICE to satisfy both its discovery obligations in a federal lawsuit and the regulation).

The regulation provides that ACLUM must request immigration detainee information from DHS pursuant to federal authority. Enforcement of the state court's order would allow litigants to sidestep federal regulations, as ACLUM did here, and make indirect demands under state public records laws to state or local entities—which is expressly prohibited by 8 C.F.R. § 236.6. The United States' interest is substantial, and the impact of the state court's order is significant.

Relying on *Rahim v. Dist. Att'y for Suffolk Dist.*, 486 Mass. 544, 159 N.E.3d 690 (2020), ACLUM will argue that PCSD's records concerning ICE detainees are a matter of public record. *Rahim* is readily distinguishable. In *Rahim*, the District Attorney requested and received materials from the Federal Bureau of Investigation ("FBI") as part of an investigation. *Id.* The question before the Massachusetts Supreme Judicial Court ("SJC") was whether the FBI's records were public records under Mass. Gen. L. ch. 66, § 10(a) of the public records law, and whether any state public records law exceptions applied to exempt them from disclosure. *Id.* at 545. Relying on state public records law, the SJC held that the records were public records because the FBI's

records had been "received" by a Massachusetts governmental entity as defined by state public records law. *Id.* at 547–48. In response to the government's argument that FBI materials are federal property and outside the purview of state public records law, the SJC noted that the "public law does not vest agencies with the authority to determine the statute's scope by making interagency agreements." *Id.* at 548.

However, in *Rahim*, the SJC was not considering a federal regulation that expressly prohibited disclosure of the FBI's information. The SJC did not consider a claim of federal regulatory control, including control over disclosure of immigration detainee records and information by a state service provider housing immigration detainees, all of which is governed both by an IGSA and a federal regulation. The SJC's decision did not address federal preemption, Fed. R. Civ. P. 19, sovereign immunity, or even the regulation at issue in this case. Instead, the only question answered by the SJC in *Rahim* was whether, as a general matter, FBI investigatory documents held by a state agency fell within Massachusetts' public records law, and whether exemptions under the state public records law applied to said records. Put differently, *Rahim* did not address the scenario present in this case: the existence of a valid, federal regulation which squarely prohibits disclosure of information concerning immigration detainees by an entity in state agency's possession, and where the regulation specifically provides the federal government has exclusive control over such information.

ACLUM will argue that the IGSA between the DHS and PCSD cannot be read to contract away the status of immigration detainee records as public under state public records law. The argument misconstrues the IGSA, and ignores that the IGSA incorporates 8 C.F.R. § 236.6, which prohibits PCSD's disclosure of the information as a matter of regulation, and not in an attempt to

redefine the definition of a state public record. In *Rahim*, the SJC's focus was "solely on the public records law," and the case in inapposite. *Rahim*, 486 Mass. at 547, n.8.

The United States' ability to control disclosure of official agency information through its agencies' regulations is paramount. Enforcement of the state court order directly implicates a federal interest. DHS has a legally protected interest in the information ACLUM seeks because 8 C.F.R. § 236.6 provides the United States with exclusive authority over the information covered by the regulation. The United States cannot be joined as a party in a state court action, and ACLUM's attempt to compel disclosure of ICE records and information implicates sovereign immunity, 5 U.S.C. § 301, and potentially DHS's *Touhy* regulations, as noted above. For these reasons, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7). *Pimentel*, 553 U.S. at 866–67.

**2. Prejudice to the government cannot be lessened through protective measures.**

The state court found that redaction of immigration detainee records would be consistent with 8 C.F.R. § 236.6. But that consideration does not lessen its prejudice to the government.

For the reasons stated *supra*, the state court order abrogates the authority of the United States concerning disclosure of immigration detainee information; authority that Congress decided rests with the government. There exists no protective measure to mitigate the prejudice to the government by allowing the lawsuit to proceed and requiring PCSD to disclose sensitive detainee information that is exclusively in control of the United States. This factor favors dismissal.

**3. The state court's order rendered in the government's absence is inadequate.**

The regulation at issue in this case, 8 C.F.R. § 236.6, expressly prohibits PCSD from disclosing immigration detainee information. The obligations mandated by federal regulation cannot be waived or modified by the state court or the parties in this case. The state court issued

an order significantly impacting the United States' interests in a proceeding where the government was absent, and the state court's order contravenes the federal regulation. The order is both inadequate and unenforceable. The third factor also favors dismissal.

**4. ACLUM has an adequate remedy if the action is dismissed.**

ACLUM has an alternate remedy to obtain the records and information it seeks, but has deliberately chosen not to afford itself of the alternatives. As noted, ACLUM may request the very information it seeks from PCSD by making a FOIA request to DHS. *ACLU of Mich. v. U.S. Immigr. & Customs Enf't*, No. CV 25-00184 (AHA), 2026 WL 775848, at *3 (D.D.C. Mar. 19, 2026) (FOIA provides an "adequate remedy" to compel disclosure of documents).[7] However it may choose to request immigration detainee records from the government, ACLUM must proceed federally and not through state court. But in any event, dismissal of the Complaint does not leave ACLUM without recourse.

**CONCLUSION**

The state court issued an order requiring PCSD to produce federal records for which exclusive disclosure authority rests with the United States pursuant to 8 C.F.R. § 236.6. As such, the United States' interest is directly implicated, and the government is a required party to the litigation. However, joinder is not feasible under the doctrine of sovereign immunity, the state

[7] The ACLU filed suit challenging 8 C.F.R. § 236.6 as "arbitrary and capricious and in excess of the agency's statutory authority in violation of the APA, 5 U.S.C. § 706(2)(A), (C)." In denying the government's motion to dismiss the complaint, the court found that FOIA did not provide an adequate alternative remedy for the ACLU's claims because it was not asking the court to compel disclosure of records or compliance with FOIA, but was seeking review of the legality of the final agency rule prohibiting state and local entities from disclosing ICE detainee records—records which the court found were maintained by county jails rather than a federal agency subject to FOIA. *Id.* at *3–4. ICE argued that it could obtain and control the records, and the court noted that the government could later develop those facts. *Id.* at *4 n.3.

court lacked jurisdiction to enter its order, and this Court's jurisdiction is derivative of the state court's jurisdiction. Therefore, the Complaint must be dismissed. Furthermore, the state court's order causes substantial prejudice to the United States, there is no ability to mitigate prejudice to the government, the state court's order is inadequate and unenforceable, and ACLUM has an alternate avenue available to receive the information it seeks. Thus, "equity and good conscience" requires dismissal of this action.

For all of the above reasons, the United States respectfully requests the Court vacate or quash the state court's order requiring production of federal records, and dismiss ACLUM's Complaint.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3369
Eve.Piemonte@usdoj.gov

Dated: November 12, 2026

**LOCAL RULE 7.1 CERTIFICATION**

I, Eve A. Piemonte, hereby certify that pursuant to L.R. 7.1(a)(2), I conferred with counsel for the parties in a good faith attempt to narrow or resolve the issues raised by this motion. Plaintiff opposes.

*/s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant U.S. Attorney

Dated: November 12, 2026